# Ripka *v.* Mutual Fire Insurance Company of Annville, Appellant.

*Appeals—Practice, Supreme Court—Evidence—Judge's certificate of approval—Diminution of record.*

Where the transcript of the notes of testimony and charge are properly certified, approved and filed, but a carbon copy of the transcript without the judge's approval noted thereon, is sent up with the record, the appellant may after motion to quash, bring up the original transcript with the approval of the court below, and file it with the record with the approval of the appellate court; and the result of such action will be the same as that which would have been reached by the more formal proceeding of suggestion of diminution of record.

*Appeals—Practice, Supreme Court—Bond—Filing bond—Approval of bond.*

Where a bond in appeal is marked and filed by the prothonotary of the court below, and no objection is made to the bond in the court below, the appellate court will not entertain a motion to quash because the record does not affirmatively show that the bond was approved by the prothonotary in the court below. The fact that the prothonotary personally filed the bond and attested that act by his own signature raises the presumption that he approved the bond.

*Appeals—Paper-book—Statement of question involved.*

A "statement of question involved" covering about seventeen lines of appellant's paper-book, does not violate the rule as to length.

*Appeals—Assignments of error—Evidence—Nonsuit—Distinct rulings.*

Assignments of error to the admission of evidence will be dismissed where the evidence admitted under the offers is not quoted in the assignments, and no reference is made to the page of the paper-book where it may be found.

The overruling of a motion for compulsory nonsuit is not assignable for error.

A specification of error relating to two distinct rulings does not conform with rule XIV.

*Insurance—Fire insurance—Principal and agent—Estoppel.*

An agent duly authorized to bind his company by contract for insurance may make contracts by parol which will be binding on the company before the issuing of the policy, unless there be specific charter requirements that such or all insurance contracts shall be in writing.

But in such case the contract and the authority of the agent must be satisfactorily proved. A mere statement by the plaintiff that he knew that a particular person was the agent of the defendant, an insurance company, is not sufficient to establish the agency.

Where an application for fire insurance shows on its face that the issuing of a policy depended upon the approval of the application by the company, the mere acceptance of the application and a small fee thereon by a soliciting agent without authority to approve the policy, will not, without more, establish a contract binding on the company to issue a policy, or subjecting it to liability for loss by fire pending the company's action upon the application.

No estoppel can arise either from an insurance company's failure to act upon and formally reject an application, or from the failure of the company's soliciting agent to forward the application to the company, where, before either of these things can be done, the property is totally destroyed by fire, and the soliciting agent immediately tenders to the applicant the policy fee he had paid.

Argued Oct. 30, 1907. Appeal, No. 108, Oct. T., 1907, by defendant, from judgment of C. P. Centre Co., Nov. T., 1905, No. 51, on verdict for plaintiff in case of Ezra C. Ripka v. The Mutual Fire Insurance Company of Annville. Before RICE, P. J., PORTER, HENDERSON, MORRISON, HEAD and BEAVER, JJ. Reversed.

Assumpsit on a contract of or for insurance.

The plaintiff's statement of the question involved was as follows:

The question involved is, whether the plaintiff, who signed an application for a policy of insurance upon his dwelling house, in the Mutual Life Insurance Company of Annville, Lebanon county, Pa., about five o'clock P. M., Saturday, June 10, 1905, and paying simply the application fee of $2.50, and there being no mail from that community by which the said application could be sent to the company for its acceptance or rejection until about eight o'clock A. M. of June 12, 1905, and before the application could be sent the premises for which the application had been made was destroyed by fire, of which the agent who was authorized simply to receive applications for insurance, was duly notified, can recover for the loss? Was there any negligence on the part of the com-

pany, or its agent, because the agent did not forward the application, after he had knowledge of the destruction of the premises by fire, before it was possible to have forwarded the application by mail, simply to have the company reject the application pro forma, as would bind the company and make it liable?

The facts of the case are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $519.  Defendant appealed.

*Error assigned* amongst others was in refusing binding instructions for defendant.

*John G. Love,* with him *C. V. Henry,* for appellant.—There may be a parol contract of insurance to protect the assured between the taking of the risk and issuing the policy; but the company must have made the contract and it must be clearly established.

When made by an agent, his power to bind the company must clearly appear: Patterson v. Ins. Co., 81* Pa. 454; Keystone Mattress and Spring Bed Co. v. Pittsburg Underwriters of Penna., 21 Pa. Superior Ct. 38; Ins. Co. v. Johnson, 23 Pa. 72; Wood on Fire Insurance, 15, 16.

There was no negligence on the part of Mr. Breon nor on the part of the company: Harp v. Ins. Co., 49 Md. 307; Royal Ins. Co. v. Beatty, 119 Pa. 6; Pickett v. Fire Ins. Co., 39 Kansas, 697 (18 Pac. Repr. 903).

*W. D. Zerby,* with him *S. D. Gettig* and *John J. Bower,* for appellee.—There is a distinction between a contract for insurance and a contract of insurance.  A contract for insurance may culminate in a contract of insurance, or may be terminated by rejecting the preliminary contract for sufficient cause.  After a preliminary contract or contract for insurance has been entered into by the company or its agent the same must be performed in accordance with its terms and cannot be arbitrarily disregarded: Ostrander on Insurance (2d ed.), sec. 9,

p. 34; Somerset Co. Mutual Fire Ins. Co. v. May's Exr's., 2 W. N. C. 43; Franklin Ins. Co. v. Colt, 87 U. S. 560.

A promise lacking mutuality at its inception becomes binding upon the promisor after performance by the promisee: Willets v. Sun Mutual Ins. Co., 6 Am. Rep. 31.

Where a contract for insurance was duly entered into between an applicant for insurance and the insurance company and the property to be covered by the policy for which the contract calls is destroyed by fire, the insurance company will not be relieved from the performance of said preliminary contract or contract for insurance by reason of the destruction of the property: State Fire & Marine Ins. Co. v. Porter, 3 Grant's Cases, 123; Smith v. Sugar Valley Mutual Fire Ins. Co., 5 Pa. Dist. Rep. 336.

OPINION BY RICE, P. J., July 15, 1908:

A transcript of the notes of testimony and charge, properly certified by the official reporter, and approved by the trial judge in the form prescribed in rule VI, was duly filed in the office of the prothonotary of the common pleas, and, together with the above certificate and approval, is printed in the appellant's paper-book. But it appears that, instead of this transcript, a carbon copy of it, which, though certified by the stenographer and filed in the office of the prothonotary of the common pleas, was not certified by the judge, was sent up with the record. Attention having been called by the appellee's motion to quash the appeal to this omission in the copy returned to this court, the prothonotary of the common pleas, at the request of appellant's counsel, and with the approval of the trial judge, immediately certified and sent up the original and properly approved transcript. Upon filing these papers in the office of our prothonotary, which we now direct, the same result is reached that would have been reached by the more formal proceeding of suggestion of diminution of record. Therefore, the second reason assigned in support of the motion to quash must be overruled.

The appeal was taken in May, 1907, and on the back of the certiorari, which was returnable in October, the prothonotary

of the common pleas certified the names of the two sureties and the amount of the bond and sent up the bond with the record. It is in due form, it was filed within twenty-one days after judgment, and has indorsed thereon the words "Filed May 13, 1907, A. B. Kimport Pro." No objection to the bond was made in the court below, and the only objection raised against it in the motion to quash is that the record does not affirmatively show that it was approved by the prothonotary of the common pleas. It is not alleged that it was not approved by him, and the statute does not expressly declare that the indorsement of his approval upon the bond itself or writing it in the record is a condition precedent to the right of appeal. In answer to the appellee's motion to quash, the appellant's counsel obtained and filed with our prothonotary the certificate of the prothonotary of the common pleas "that the omission to endorse a formal approval of the bond in the case was a mere oversight, and I desire that it shall be considered approved as of the date it was filed." The fifth section of the act of 1897 provides in part as follows: "Except as herein otherwise provided and subject to revision by the court from which the appeal is taken, the prothonotary or clerk thereof shall fix the amount of bail and approve or reject the security offered." Section 6 provides that an appeal from a money judgment shall operate as a supersedeas if the appellant gives bond with sufficient surety or sureties in double the amount of the judgment and all costs accrued and likely to accrue, etc. And the fifteenth section provides that: "where a corporation, other than a county, township or municipal corporation, appeals on its own behalf, such appeal shall be quashed, unless bail is given to operate as a supersedeas as by this act required." The point decided in Denlinger v. Conestoga Electric Light & Power Company, 32 Pa. Superior Ct. 418, is correctly stated in the syllabus as follows: "Where on an appeal by a business corporation from a money judgment, the record shows that objection was made to the appeal bond, and that no other bail was offered, and that the bond was not approved by the prothonotary, the appeal will be quashed." The differences between that case and this are substantial. There,

as appears in the opinion, the indorsement on the bond showed affirmatively that the sufficiency of the bond and surety was objected to and that the bond was not approved. In this case no objection was made in the court below or here, to the form, or amount, or the execution of the bond, or to the sufficiency of the sureties; and it is not shown by the record nor alleged in the appellee's motion that it was not approved. It being the duty of the prothonotary to "approve or reject the security offered," the fact that he personally filed the bond, and attested that act by his own signature, not only precludes conjecture that he rejected the security offered, but raises a natural presumption that he approved it, which presumption ought to prevail upon a hearing of a motion to quash the appeal, unless the contrary is alleged by the appellee or is indicated by the record. Taking this view of the question, it is unnecessary to consider the supplemental certificate of the prothonotary above referred to.

The appellant's statement of the question involved is such as to carry out the design of the rule upon that subject, namely, to enable the court to obtain an immediate view of the nature of the controversy. It does not violate the rule as to length, and although two dates are mentioned, no confusion or obscurity arises therefrom, although it must be said that it was not absolutely necessary to mention them in order to present the question for decision. We are not disposed to relax the rule, but the departure from it in this case is so slight as to be within the principle de minimis. It is to be observed further that the paper-book was prepared before the recent announcement of the Supreme Court upon the subject.

The first and second specifications of error are dismissed, because the evidence admitted under the offers is not quoted in the assignments, and no reference is made to the page of the paper-book where it may be found: Rule XVI. The third specification is dismissed, because the overruling of a motion for compulsory nonsuit is not assignable for error. The sixth specification relates to two distinct rulings, first, the reservation of a question of law, secondly, the entering of judgment in favor of the plaintiff, and therefore is not in strict con-

formity with rule XIV. But the controlling question in the case is raised by the fourth and fifth specifications, in which the refusal of defendant's points for binding instructions are properly assigned for error.

Throughout the plaintiff's statement of claim the contract upon which he sued is designated as a contract of insurance. The language is: "The plaintiff . . . . claims of the defendant . . . . the sum of $500 with interest, . . . . according to a certain contract of insurance in writing executed by the said . . . . plaintiff, and John Breon, agent for the defendant company, on the 10th day of June A. D. 1905; a copy of said contract of insurance is hereto attached and made a part hereof." But his counsel, after pointing out the distinction between a contract of insurance and a contract for insurance, insisted in their argument here that the evidence established a contract for insurance. As will be seen presently, we need not consider the question of variance. The facts testified to by the plaintiff and his witnesses are substantially as follows: On Friday, June 9, 1905, the plaintiff requested one J. H. Breon to come to his place the following day for the purpose of having his, the plaintiff's, buildings insured. Breon came on the following day, examined and measured the property, and filled the blanks in a printed form so that it became an application by the plaintiff for insurance, to the amount of $500, by the defendant company, against loss or damage by fire, upon the buildings described therein. This application was then signed by the plaintiff and by Breon as agent, but without specifying for whom he was agent, and delivered to Breon. At the same time the plaintiff paid Breon $2.50. The paper does not show, and there is no direct evidence to show, what this payment was for, but one of the by-laws of the defendant company provides: "Every person signing an application for insurance, if accepted by the company, shall pay one dollar and fifty cents for each policy of insurance granted him or her and the required premium, and no premium so paid shall ever be withdrawn from said company during the continuance of its charter, but shall be considered earned as soon as policy is issued." It may be inferred, perhaps, that the payment was in-

tended to cover this policy fee, at least, but that the balance or the whole sum was the premium required on such a policy as the plaintiff applied for is left wholly to surmise. It appears that there was no outgoing mail by which the policy could be sent to the office of the company in Lebanon county until the following Monday morning at eight o'clock, and between five and six o'clock that morning the buildings were totally destroyed by fire. On the same morning the plaintiff notified Breon of the loss, and thereupon Breon tendered him the $2.50 he had paid, which the plaintiff refused to accept. At the same time Breon said to the plaintiff that he had not forwarded the application to the company, and there is no evidence that it was ever forwarded.

It is not disputed that an agent duly authorized to bind his company by contract for insurance may make contracts by parol which will be binding on the company before the issuing of the policy, unless there be specific charter requirements that such or all insurance contracts shall be in writing. But in such case the contract and the authority of the agent must be satisfactorily proved. Upon this subject we refer to Patterson v. Benjamin Franklin Insurance Co., 81* Pa. 454; Keystone Mattress, etc., Co. v. Pittsburg Underwriters of Penna., 21 Pa. Superior Ct. 39; N. Y. Union Mutual Insurance Co. v. Johnson, 23 Pa. 72; 19 Cyclopedia of Law & Procedure, 594, 595. The only evidence we can find of Breon's authority, or of his being the company's agent of any kind, is contained in the following excerpt from the plaintiff's testimony: "Q. State whether you knew what company Mr. Breon represented? A. Yes, sir.  Q. For what company did Mr. Breon take insurance?  A. The Lebanon Mutual Fire Insurance Company of Annville." This, without more to show the source of plaintiff's knowledge, would be insufficient to prove Breon's authority to bind the company by a parol contract to insure. But it is conceded by appellant's counsel that he was a local agent with authority to take applications for insurance and forward them to the company for approval or rejection; there is no evidence and no concession of counsel that he was furnished with blank policies to fill and deliver, or that he had

any other authority than that above stated. Besides that, we discover no evidence sufficient to support a finding that Breon made an oral contract on behalf of the company that the company would be liable for loss accruing before its approval of the application. Therefore recovery on this ground must fail because of lack of proof both as to the contract and the authority of Breon, even though the pleadings were sufficient to sustain a recovery upon an agent's oral contract to insure.

We turn then to the question whether a contract arose upon the delivery of the application. The application contained a warranty on the part of the plaintiff of the truth of the matters set forth therein, and stipulations or undertakings on his part that he would accept the policy issued thereon and that the application should be considered part of the policy, and then occurs a clause which it is well to quote verbatim. "For value received and in consideration of a policy of insurance to be issued by the Mutual Fire Insurance Company of Annville, Lebanon county, Pa., upon the approval of my application for insurance in said company, of this date, I promise to pay the said company such sum or sums of money, and at such time or times, as the board of managers of said company may, for the purpose of paying losses by fire and the necessary expenses of said company, require payable within thirty days after date of notice at the company's home office at Annville, Pa. The policy to bear date and take effect at noon of the said day this application is dated, if approved, unless directed to be dated at a future day." It is thus seen that by the express terms of the paper the issuing of a policy insuring the plaintiff's property depended upon the approval of the application by the company, and it is not pretended that Breon had any authority to approve it; and if he had no authority to act for the company in that matter his mere acceptance of the paper could not have the effect of an approval. Again, the right was reserved, even if the application should be approved, to direct when the policy should be dated, and take effect. We need not elaborate further, and we are warranted in saying that there is not a clause or a word in the application which by any sort of rea-

soning can be construed as binding the company to issue a policy, or as subjecting it to liability for loss by fire pending its action upon the application. The remarks of LOWRIE, J., in New York Union Mutual Insurance Co. v. Johnson, 23 Pa. 72, are pertinent here. "It is argued that it has often been declared that taking a man's application, fixing the terms, and receiving the premium, are sufficient evidence of an insurance; and so they are, when it thereby appears that the contract is complete, and nothing is wanting but the issuing of the policy. But when, as here, it is plain that the application and payment of the premium amount only to a proposal for insurance, we cannot make a contract out of it." This is all this paper amounted to at the time it was delivered to Breon.

Nor did a contract of insurance or a contract for insurance arise from the failure of the company to promptly act upon and reject the application. Whether or not such a contract would arise by operation of law from unreasonable delay in notifying the applicant that it was rejected, or, in other words, whether, after unreasonable delay on the part of the company in acting on an application like this, the applicant has the right to assume and the company is estopped to deny that it had been approved, is a question that does not arise upon the facts of this case. No estoppel can arise either from the company's failure to act upon and formally reject the application, or from the failure of its soliciting agent to forward it to the company, where, before either of these things can be done the property is totally destroyed by fire and the soliciting agent immediately tenders to the applicant the policy fee he had paid.

We have examined the cases cited by the learned counsel for appellee and do not find that they conflict with the foregoing conclusions.

The motion to quash is overruled; the first, second and sixth assignments are dismissed, the fourth and fifth assignments are sustained, the judgment is reversed and judgment is now directed for the defendant.